# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9175 | **DATE** | 3/13/2003 |
| **CASE TITLE** | FIRST SPECIALTY INSURANCE CORP. vs. CONTINENTAL CASUALTY COMPANY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. First Specialty's motion for summary judgment is granted. Continental and the Academy's cross-motions for summary judgment are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 14 2003 | |
| | Notified counsel by telephone. | | date docketed | 59 |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 MAR 13 PM 5:53 | | |
| LG | courtroom deputy's initials | FILED 10 03-0371J | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRST SPECIALTY INSURANCE CORPORATION, )
a Missouri corporation, )
)
    Plaintiff/Counterclaim Defendant, )
)
v. )
)   No. 01 C 9175
CONTINENTAL CASUALTY COMPANY, an )
Illinois corporation; and AMERICAN ACADEMY )   Judge John W. Darrah
OF DERMATOLOGY, INC., a Minnesota )
nonprofit corporation, )
)
    Defendants/Counterclaim Plaintiffs. )

MAR 1 4 2003

## MEMORANDUM OPINION AND ORDER

Several causes of action are involved in the present litigation. The first cause of action is a Complaint for Declaratory Judgment filed by First Specialty Insurance Corporation ("First Specialty"). First Specialty's complaint seeks a declaratory judgment finding that: (1) Continental Casualty Company ("Continental") had a duty to defend the American Academy of Dermatology, Incorporated ("the Academy") with respect to a lawsuit filed against the Academy in the United States District Court for Southern Florida (the "Underlying Lawsuit"); (2) the coverage provided by the Continental policy for attorneys' fees and other costs associated with the defense of the Academy in the Underlying Lawsuit is primary coverage; (3) any coverage under the First Specialty policy for such attorneys' fees and other costs is excess to coverage under the Continental policy for such attorneys' fees and other costs; and (4) First Specialty has no duty to pay such attorneys' fees and costs.

The second cause of action is a counterclaim filed by Continental. Continental's

counterclaim seeks a declaratory judgment finding that : (1) First Specialty had a primary duty to defend four out of five counts in the Underlying Lawsuit; and (2) First Specialty breached this duty to defend and is, therefore, responsible for all amounts expended in defense of the Academy in the Underlying Lawsuit; or (3) alternatively, First Specialty must reimburse Continental for 4/5ths of the amounts expended for the defense of the Academy in the Underlying Lawsuit.

The third cause of action is a counterclaim filed by the Academy. The Academy's counterclaim alleges that First Specialty has a duty to defend and pay attorneys' fees and other costs associated with the defense of the Academy in the Underlying Lawsuit. The counterclaim further alleges that First Specialty breached these duties and seeks damages as a result of such alleged breaches. Presently before the Court are the parties' Motions/Cross-Motions for Summary Judgment.

## BACKGROUND

On or about January 19, 2001, Sorrel S. Resnik ("Resnik") filed a complaint in the United States District Court for the Southern District of Florida against the Academy. (Plaint.'s 56.1(a)(3) Statement ¶ F6).[1] The Resnik complaint contained five counts: unlawful attempt to remove Resnik from office, Count I; failure to follow the Academy's election regulations, Count II; use of unfair and otherwise unlawful procedures, Count III; declaratory relief, Count IV; and defamation, Count V. (Def.'s 56.1(a)(3) Statement ¶ C7). Counts I, II, and III sought an injunction and compensatory and punitive damages. (Plaint.'s 56.1(a)(3) Statement ¶¶ F10, F12, F14). Count IV sought a declaratory judgment that the Board of Directors of the Academy had no legal authority for its decision that was

---

[1]First Specialty's statements of undisputed facts are identified with the prefix "F". Continental's statements of undisputed facts are identified by the prefix "C". The Academy's statements of undisputed facts are identified with the prefix "A".

the primary basis of the suit. (Id., at ¶ F15). Count V sought compensatory and punitive damages. (Id., at ¶ F16). In his complaint, Resnik alleged that the Academy's Board of Directors wrongfully removed Resnik from the office of President of the Academy, that the Board made "false and defamatory statements" to the members of the Academy and to the news media explaining the basis for that removal and that the Board sent a letter stating that Resnik "violated the Academy's administrative regulations and failed to disclose other pertinent information that was necessary in order to make the letter truthful, accurate, and non-defamatory." (Def.'s 56.1(a)(3) Statement ¶ A4).

Continental had issued a general liability insurance policy to the Academy. (Plaint.'s 56.1(a)(3) Statement ¶ F17). The policy was in effect from February 1, 2000 to February 1, 2001. (Id., at ¶ F19). The Continental policy stated, in part:

> COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY
>
> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and the duty to defend the insured against any "suit" seeking those damages.

(Id., at ¶ F20). "Personal and advertising injury" was defined as: "injury, including consequential 'bodily injury', arising out of one or more of the following offenses ... [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; [o]ral or written publication that violates a person's right of privacy...." (Id., at ¶ F21).

The Continental policy also contained the following "other insurance" clause:

> Other Insurance
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A and B of this Coverage Part, our obligations are limited as follows:
>
> a. Primary Insurance
> This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all other insurance by the method described in c. below.
>
> B. Excess Insurance
> This insurance is excess over:
> (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:
> (a) That is Fire, Extended Coverage, Builder's Risk or similar coverage for "your work";
> (b) This is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
> (c) This is insurance purchased by you to cover your liability as a tenant for Property damage to premises rented to you or temporarily occupied by you with permission of the owner; or
> (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent ....
> * * *
> 2. ...
> When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
> (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
> (2) The total of all deductible and self-insured amounts under all that other insurance.
> We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance ...
> * * *
> C. Method of Sharing
> If all other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of

insurance or none of the loss remains, whichever comes first.
If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(Plaint.'s 56.1(a)(3) Statement ¶ F22).

First Specialty issued a Nonprofit Organization Liability Insurance policy to the Academy. (Plaint.'s 56.1(a)(3) Statement ¶ F23). The First Specialty policy was effective from September 14, 2000 to September 14, 2001. (Id., at ¶ F24). The First Specialty policy contained, in part, the following insuring agreement:

> XV. OTHER INSURANCE
> If the "entity" or any "insured" has other insurance against a "loss" covered by this policy, the insurance provided by this policy shall apply in excess of such other insurance.

(Id., at ¶¶ A26-A27); Def.'s 56.1(a)(3) Statement ¶ C15).

On December 28, 2000, First Specialty received notice of a potential claim from the Academy. (Def.'s 56.1(a)(3) Statement ¶ C18). On January 19, 2001, the Academy forwarded the Resnik complaint to First Specialty. (Id., at ¶ C20).

In a February 12, 2001 letter, Continental informed the Academy that because Count V, the defamation count, was potentially covered under the Continental policy, it would participate in the defense of the Academy. Continental also informed the Academy that Counts I through IV were not covered under the Continental policy. (Def.'s 56.1(a)(3) Statement ¶ C21). On February 20, 2001, First Specialty wrote to the Academy in response to the Academy's tender of defense and acknowledged a potential coverage under the First Specialty policy. (Id., at ¶ C22). The letter stated, in pertinent part:

> Based upon my discussions with Jim Gavin of your staff, I am aware that CNA has also been placed on notice of this matter for coverage available under your policy with CNA and has confirmed its obligation to defend the Academy. I have requested from Mr. Gavin a copy of your insurance policy with CNA.... First Specialty reserves the right to withdraw from the defense of this matter if it is determined that First Specialty's policy is excess of CNA's policy.

Def.'s 56.1(a)(3) Statement ¶ A6).

By letter dated May 21, 2001, First Specialty wrote to Continental and took the position that although there was a potential for coverage under the First Specialty policy, its policy was excess over the Continental policy. (Def.'s 56.1(a)(3) Statement ¶ C23). On July 19, 2001, Continental informed First Specialty, by letter, that Continental took the position that both policies were triggered and that the cost of the defense should be shared equally. (Id., at ¶ C25).

First Specialty initially agreed to pay the fees incurred by Kubicki Draper in defense of the Underlying Lawsuit. (Def.'s 56.1(a)(3) Statement ¶ A10). Continental paid $156,549.63 in defense costs which constitutes all of the costs and fees incurred by the Academy's defense counsel, Kubicki Draper, in connection with the Underlying Lawsuit. (Def.'s 56.1(a)(3) Statement ¶ C25). The Underlying Lawsuit was dismissed with prejudice pursuant to settlement on August 21, 2001. (Id., at ¶ C26).

First Specialty filed its declaratory judgment on November 29, 2001. (Def,'s 56.1(a)(3) Statement ¶ C27). On December 21, 2001, the Academy requested that First Specialty reimburse the fees of its independent counsel. (Def.'s 56.1(a)(3) Statement ¶ A13). First Specialty refused to pay the fees for the Academy's independent counsel, and First Specialty has not paid the attorneys' fees related to the work of Kubicki Draper. (Id., at ¶¶ A15-A17).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

First Specialty argues that it does not have a duty to defend the Academy in the Underlying Lawsuit because its policy constitutes excess coverage and the Continental policy constitutes primary coverage. First Specialty relies upon its "other insurance" clause to support its argument. Continental and the Academy both argue that First Specialty had a primary duty to defend the Academy in the Underlying Lawsuit. Continental and the Academy assert that First Specialty's "other coverage" clause does not apply to the instant case.

The Illinois Supreme Court has recognized three basic types of "other insurance" clauses: the *"pro-rata* clause", the "excess clause", and the "escape clause". *See Putnam v. New Amsterdam Cas. Co.*, 48 Ill. 2d 71, 76 (1970) (*Putnam*). A *pro rata* clause typically provides that when an insured has other available insurance, the company will be liable only for the proportion of loss represented by the ratio between its policy limit and the trial limits of all available insurance. An excess clause allows coverage only over and above other insurance. The escape clause holds the policy null and void with respect to any hazard as to which other insurance exists. *Putnam*, 48 Ill. 2d at 76. "[A] policy conditioned by an excess clause, or an escape clause, is not such "other

insurance" as will activate the *pro rata* clause of another policy..." *Putnam*, 48 Ill. 2d at 80.

"Illinois law is clear that primary and excess insurers insure different risks." *See Krusinski Const. Co. v. Northbrook Property & Casualty Ins. Co.*, 326 Ill. App. 3d 210, 219 (2001) (*Krusinski*). Primary insurance liability attaches immediately upon the happening of the occurrence that gives rise to the liability. *See Krusinski*, 326 Ill. Ap. 3d at 219. Primary insurance generally imposes a duty of defense on the insurer -- a duty separate from the duty to indemnify the insured against the claim. *See Krusinski*, 326 Ill. App. 3d at 219.

On the other hand, excess insurance liability attaches only after a predetermined amount of primary coverage has been exhausted. Rather than providing a duty to defend, most excess policies require the excess insurer to indemnify the insured for the costs of the defense as part of the "ultimate net loss" against which the policy insures. *See Krusinski*, 326 Ill. App. 3d at 219; *Zurich Ins. Co. v. Northbrook Excess & Surplus Ins. Co.*, 145 Ill. App. 3d 175, 201 (1986). Accordingly, the protections and duty under an excess insurance policy do not begin until those of the primary insurance end. *See Home Indemnity Co. v. General Accident Ins. Co. of America*, 213 Ill. App. 3d 319, 321 (1991) (*Home Idemntity*); *Western Casualty & Surety Co. v. Western World Ins. Co.*, 769 F.2d 381, 385 (7th Cir. 1985) (*Western*) (interpreting Illinois law). However, if a loss is covered by two excess policies, the insurers must divide the liability equally between themselves. *See North American Specialty Ins. Co. v. Liberty Mutual Ins. Co.*, 297 Ill. App. 3d 595, 598 (1998).

Based on the above law, the controlling issue is whether the two policies at issue are primary or excess. Neither party disputes that at least one of Resnik's claims fell within the coverage of the respective policies. Continental acknowledged coverage for the defamation claim (Count V), and First Specialty acknowledged coverage for Counts I through IV. Continental's policy stated, in

pertinent part, that its "insurance is primary except when b. below applies." Section "b" in this policy provided incidents when Continental's insurance would be considered excess insurance. Continental has conceded that the defamation claim is not considered to be excess insurance within section "b". Accordingly, Continental is a *pro rata* primary insurer in the instant case.

First Specialty's policy states, in pertinent part, that if the insured "has any other insurance against a "loss" covered by this policy, the insurance provided by this policy shall apply in excess of such other insurance."

In the instant case, Reskin incurred a single loss based on multiple theories of liability. The Underlying Lawsuit was settled in a manner that makes it impossible to know what theory of liability (if any) was dispositive. Under almost identical facts, and an identical "other insurance" clause as contained in First Specialty's policy, the Seventh Circuit found that a "loss" is not the same as a theory of liability. *See Western*, 769 F.2d at 384. As in this case, the primary insurer covered the loss; therefore, under the "other insurance" clause that provided that *Western World's* policy was "excess" when the "loss" was covered by another policy mandated a finding that *Western World's* policy was excess. *See Western*, 769 F.2d at 384.

Continental argues that *Western* is not applicable to the instant case because the coverage afforded under the First Specialty and Continental policies are distinct from one another as they do not cover the same "loss" and the policies at issue in *Western* had overlapping coverage for the same loss. However, as in *Western*, both of the instant policies cover the same "loss" - damages arising out of the injury to Resnik's reputation and the defense costs. *See Western*, 769 F.3d at 384.

Continental also argues that *Western* has been rejected, at least indirectly, by Illinois courts. Specifically, Continental notes that the *Western* court relied upon *Home Ins. Co. v. Certain*

9

*Underwriters at Lloyds, London*, 729 F.2d 1132 (7th Cir. 1984) (*Home*) and asserts that the *Home* opinion was disapproved in *Illinois Emcasco Ins. Co. v. Continental Cas. Co.*, 139 Ill. App. 3d 130 (1985) (*Emcasco*). However, the *Emcasco* court did not reject the *Home* opinion *in toto*. Instead, the court refused to apply the holding in *Home* -- that two policies both containing excess clauses should be deemed co-insurers when all of the policies cover the same loss – where one of the policies was excess on its face because a policy excess on its face "always remains excess over and above all other applicable forms of contract." *Emcasco*, 139 Ill. App. 3d at 133-34. *Western* did not involve any policy that was excess on its face and did not involve the application of that part of *Home* that was rejected in *Emcasco*. Furthermore, recent Illinois courts have approved the *Home* holding where, as in the instant case, none of the policies are excess on their face. *See Continental Cas. Co. v. Security Ins. Co. of Hartford*, 279 Ill. App. 3d 815, 819-20 (1996).

In the instant case, Continental defended the Reskin suit against Reskin's "loss". Accordingly, First Specialty's policy is excess, and it did not breach its duty to defend. *See Western*, 769 F.2d at 384; *Home Indemnity*, 213 Ill. App. 3d at 321; *Employers Mutual Co. v. Country Co.*, 211 Ill. App. 3d 586, 590 (1991) (no duty breached by excess insurance carrier) (*Country Co.*).

Defendants also argue that First Specialty is estopped from contesting coverage. When a complaint against an insured alleges facts that potentially bring the action within the scope of an insurance policy coverage, the insurer taking the position that the complaint is not covered by the policy must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. *Korte Construction Co. v. American States Ins.*, 322 Ill. App. 3d 451, 457 (2001) (*Korte*). If the insurer fails to exercise either of these two options and refuses to defend the insured who ultimately incurs an adverse judgment , the insurer will be estopped from raising noncoverage

as a defense to an action brought to recover the policy proceeds. *Korte*, 322 Ill. App. 3d at 457. Furthermore, an insurance company that breaches its duty to defend is later estopped from denying coverage. *See LaGrange Mem. Hosp. v. St. Paul Ins. Co.*, 317 Ill. App. 3d 863, 870 (2000); *Hartford Accident & Indemnity Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1282 (7th Cir. 1985).

Here, First Specialty filed a complaint for declaratory judgment following the Defendants' request for fees and costs following the resolution of the Underlying Lawsuit. First Specialty denied coverage based on its belief that it was an excess insurer that was not required to pay such fees and costs. Estoppel would not apply because, as discussed above, First Specialty did not breach its duty to defend. Furthermore, the failure to defend estops an insurer from raising exclusionary defenses, not an excess carrier defense. *See Country Co.*, 211 Ill. App. 3d at 591. Accordingly, First Specialty is not estopped from denying coverage.

## CONCLUSION

For the reasons stated above, First Specialty's Motion for Summary Judgment is granted. Continental and the Academy's Cross-Motions for Summary Judgment are denied.

Dated: March 13, 2003

JOHN W. DARRAH
United States District Judge

11